# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| DANNY WAYNE MOORE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:11-cv-00257-RBP-JHE |
| ANDY FAURQUIRE, *et. al.*, | ) |
| Defendants. | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Danny Wayne Moore ("Moore") initiated this action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 in which he alleged that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at the Decatur Work Release in Decatur, Alabama. Moore names Andy Faurquire, Superintendent for Alabama Correctional Industries; Former DOC Commissioner Richard Allen; Mrs. Bertina Carter, Warden of Decatur Work Release; and ACI Supervisors Mr. Johnson and Mr. Martin as defendants. Moore seeks $600,000 in money damages. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737 (1991).

### I.  PROCEDURAL HISTORY

Moore initially filed a complaint against Richard Allen and Andy Farquire, alleging while he was working for the Alabama Correctional Industries on a paint crew for $1 per hour, he was exposed to lead based paint, had to fix the other workers' mistakes, and sprayed paint

stripper for a week without the proper protective gear causing damage to his lungs and sinuses as a result.  Doc. 1.  Moore identified Mr. Martin and Mr. Johnson as his supervisors on the job, and appeared to imply their involvement, but did not name them as defendants.

Because the complaint did not provide the dates Moore worked for ACI, and it was unclear under what theory he was attempting to sue the named defendants or whether he had intended to sue his direct supervisors, Moore was notified he had failed to set forth his claims adequately and ordered to replead his complaint.  Doc. 6.  Moore was provided with a § 1983 complaint form and instructed to identify by name those defendants against whom he wished to assert claims, and to include sufficient factual content to allow the court to identify the specific claims made against each defendant, including the dates and locations of the events or omissions giving rise to the particular claims asserted.  *Id.*

 In response, Moore filed a "Brief Statement," wherein he failed to name *any* defendants, identify how the named defendants violated his rights, or provide the dates of the alleged violations.  Doc. 7.  Because Moore simply repeated his narrative, adding that a swollen nodule had since been discovered in his lung, it was recommended this action be dismissed without prejudice for failing to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1).  Doc. 8.

Moore filed numerous objections, docs. 9, 10, 11, which revealed he had filed what he intended to be a repleaded complaint naming both Martin and Johnson as defendants, but had neglected to label it with an identifying case number. That pleading had been opened as a new case, assigned case number 5:11-cv-2652-JHH-RRA, and dismissed as successive.

As Moore had attempted to comply with the court's order to replead his complaint, he was given the opportunity to file a final amended complaint. Doc. 13.  Moore was again

cautioned to state clearly how each named defendant violated his constitutional rights, the date(s) on which the incident(s) occurred, and where the incident(s) occurred. He was further advised to include all of the claims he wished to present in the amended complaint, and warned that the Court would consider only the claims set forth in the amended complaint. *Id.*

Moore filed an amended complaint naming as defendants ACI Superintendent Andy Faurquire, Alabama DOC Commissioner Richard Allen, Warden Bertina Carter, and paint crew supervisors Mr. Martin and Mr. Johnson. Doc. 14. Moore asserted Defendants knowingly violated his constitutional rights under the Fair Labor Standards Act by offering him employment on a job in the community for less than the minimum wage when he was an inmate in a work release facility. Doc. 14 at 3. Moore stated he worked from July 15, 2009 until April 15, 2010 on lead based paint jobs at the Fendal Hall and Joe Wheeler Museums, and made the conclusory assertion he suffered from headaches and was short winded because he did not have "proper equipment on the job." *Id.* at 3-4. In spite of being cautioned the court would consider only the claims set forth in the amended complaint, Moore provided no further factual argument or support. Doc. 14.

A superseding report and recommendation was entered, again recommending the action be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failing to state a claim upon which relief may be granted. Doc. 19. Moore filed unsworn objections with further factual allegations to support his Eighth Amendment claim. Doc. 21. The Superseding Report and Recommendation was vacated, and Moore was given one final opportunity to amend his complaint regarding that claim. Doc. 22. Moore filed a superceding amended complaint. Doc. 24. An Order for Special Report was entered, directing the clerk to forward a copy of the superseding amended complaint to the Defendants and requesting Defendants file a Special Report addressing the factual

allegations contained in the complaint. Doc. 31.  Defendants were advised the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56.  *Id*.  By the same order, Moore was advised he should file counter-affidavits if he wished to rebut the matters presented by Defendants after he received a copy of the Special Report.  *Id*.

On February 12, 2013, Defendants filed a Special Report.  Doc. 39.  Moore was notified Defendants' Special Report would be construed as a motion for summary judgment and given twenty (20) days to respond by filing affidavits and other material if he chose.  Doc. 42.  The court advised Moore of the consequences of any default and of the consequences of failure to comply with Fed. R. Civ. P. 56.  Doc. 42.

Moore filed responses to the Special Report, docs. 40, 44, and made a subsequent request for additional medical records and discovery.  Doc. 46.  That request was granted in part, doc. 49, Defendants submitted a supplement to their Special Report, doc. 52, and Moore responded thereto. Doc. 53.

## II. SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *See Chapman v. AI Transp*., 229 F.3d 1012, 1023 (11th Cir. 2000).

The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a

matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, can show some evidence regarding each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  The Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issues as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

### III. SUMMARY JUDGMENT FACTS

Applying the foregoing summary judgment standard, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to Moore.

Plaintiff Moore is an inmate in the custody of the Alabama Department of Corrections. Docs. 39 at 3; 39-3 at 3. He is currently housed in the Bibb Correctional Facility. Doc. 47. Moore is a chronic smoker, doc. 39-6 at 40, 42, has a metal plate in his skull, doc. 39-6 at 3, and has been diagnosed with Hepatitis-C. Doc. 39-6. Prior to his incarceration, Moore had been employed as a mechanic at Penzoil and as a carpenter with a construction company. Doc. 39-3 at 20.

Moore worked for the Alabama Correctional Industries between July 15, 2009 and April 15, 2010. Doc. 24 at 4. During that time, he worked on lead-based paint jobs at the Fendal Hall and Joe Wheeler Museums. Doc. 24 at 3-4. Inmates performing lead-based paint abatement work did so voluntarily, and were afforded the opportunity to change jobs if they were not comfortable performing that work or using the required protective equipment. Doc. 39-1 at 2.

Prior to working with lead based paint, Moore was medically examined and cleared to use a respirator, then underwent voluntary training on lead-based paint abatement for inmate workers in September of 2009 in Montgomery, Alabama. Doc. 39-1 at 2, 4-5. This training imparted information on the routine processes, equipment, chemicals, and safety procedures used in lead-based paint removal. Doc. 39-1 at 2. Moore completed the program, and obtained a Certificate of Accreditation. Doc. 39-1 at 2. He began working for Alabama Correctional Industries in July 2009, and worked with lead based paint starting in 2009. Doc. 39-3 at 1.

Moore was assigned to the Decatur Community Based Facility from March 8, 2010, until he escaped on August 16, 2010. Doc. 39-3 at 1,5. He worked on the restoration of the historic Wheeler House between March 10, 2010 and May 12, 2010. Doc. 42-A at 1. This site was larger than two acres in size. Doc. 39-1 at 2. Defendants Johnson and Martin were the supervisors for the Wheeler House job. Doc. 39-1 at 1. They ensured safety equipment was

available for and being used properly by all inmate workers, and made sure the inmate crew used the proper protective gear for work involving possible exposure to lead. Doc. 39-1 at 2 Because of the size of the work site, not all inmates could be observed at all times, but any inmate caught failing to use the proper protective gear was counseled and would be terminated if the failure continued. Doc. 39-1 at 3.

At some point while he was working on the Wheeler House, Moore spent one week spraying paint stripper with only a face shield. Doc. 24 at 3.  Moore asked Defendants Johnson and Martin for a ventilator so he could have fresh air and oxygen, but they did not provide him with anything other than the face shield, and asked him whether he thought Defendant Faurquire would actually provide a ventilator for that job. Doc. 40 at 1.  Moore performed the work and did not complain about his working conditions to Warden Carter, or, to the best of her knowledge, anyone else while he was at Decatur Work Release. Doc.39-3 at 1.

On May 12-13, 2010, Moore reported to the infirmary with a productive cough of "thick green stuff," nasal drainage, and what he categorized as a breathing problem.  Doc. 39-6 at 13-15.  The nurse practitioner determined Moore's lungs were clear, diagnosed him with hay fever or allergies, and prescribed a nasal spray and allergy tablets. Doc. 39-6 at 14.

On November 17, 2010, Moore was seen at Limestone Correctional Facility's sick call and requested pills for sinus problems. Doc. 39-6 at 10.   On February 23, 2011, Moore complained of allergy like symptoms, such as sneezing and watery eyes, noting "Zyrtec help[ed] a lot."  Doc. 39-6 at 10.   Moore was diagnosed with allergic Rhinitis, and his prescription of Zyrtec was renewed. Doc 39-6 at 10.

On April 15, 2011, Moore submitted a sick call slip complaining of headaches. Doc. 39-6 at 12.  He went to the infirmary on April 18, 2011, and scheduled to see the Nurse Practitioner.

Doc. 39-6 at 12. Moore saw Nurse Means at the Health Center on April 27, 2011. Doc. 39-6 at 10. He complained of sinus pressure in his face, a headache, lower back pains, stated he had coughed up blood, and requested the pain reliever Lortab. Doc 39-6 at 10. Nurse Means diagnosed him with sinusitis, prescribed an antibiotic and a sinus spray, and ordered a chest x-ray. Doc. 39-6 at 10.

The x-ray taken on May 17, 2011 revealed a "modest right midlung nodule." Doc. 39-6 at 43-44. An outside consultation was ordered, and on June 3, 2011, Moore had a CT scan at Valley Imaging. Doc. 39-6 at 27, 42. The scan confirmed the presence of a thirteen millimeter nodule in Moore's right lung. Doc. 39-6 at 42. Moore saw cardiothoracic surgeon Dr. Clay on August 17, 2011. Doc. 39-6 at 24. Dr. Clay requested that a follow up CT scan and appointment be scheduled for Moore in November of 2011. Doc. 39-6 at 24.

A second CT scan was taken on November 14, 2011. Doc. 39-6 at 41. This scan showed the nodule was stable, had not changed in the six months since the last scan, and appeared benign. Doc. 39-6 at 41. On November 16, 2011, Dr. Clay examined Moore and ordered a follow up CT scan in six months. Doc. 39-6 at 36.

A third CT scan performed on May 9, 2012, showed the nodule had not grown or changed. Doc. 39-6 at 20, 40. Dr. Clay requested a follow up appointment and CT scan in one year. Doc. 39-6 at 20. Moore was seen again by Dr. Clay on May 22, 2013[1]. Doc. 52-1 at 2.

---

[1] In Moore's unsworn "Notice" filed in response to Defendants' Special Report, doc. 45, he alleged during this visit Dr. Clay told him "the swollen nodule was caused from a fungus, which is the paint stripper, that it is a thickening in my lung walls, which is caused from the paint stripper, and . . . . that it looks like the meat is coming off my ribs in between the bottom ribs." Doc. 45. Moore is presumably attempting to use these unsworn allegations to establish a link between his use of the paint stripper for a week without a respirator and the onset of his lung problems. This document is clearly not an affidavit as required by FED. R. CIV. P. 56(e), nor does it satisfy the verification requirement of 28 U.S.C. § 1746. Consequently, Moore's "Notice" will not be considered in determining the propriety of summary judgment. *See Gordon*

Dr. Clay noted pleural thickening, and recommended a follow up appointment and CT scan in one year. Doc. 52-1 at 3. There are no medical records regarding the size of Moore's windpipe, and whether or not it has shrunk. Doc. 39-6.

## IV.  DISCUSSION

Liberally construing his claim, Moore alleges Defendants violated his Eighth Amendment rights by failing to provide him with the proper equipment for his work on lead-based paint jobs.

Prison officials violate the Eighth Amendment if they are deliberately indifference to a condition of confinement that is very likely to cause serious medical illness in the future. *See, Helling v. McKinney*, 509 U.S. 25 at 31–34 (1993). To establish deliberate indifference, a plaintiff must allege facts which demonstrate: (1) the defendants had subjective knowledge of a risk of serious harm; (2) the defendants disregarded that risk; and (3) the defendants' conduct was more than mere negligence. *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir. 2004) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

The deliberate indifference standard embodies both an objective and a subjective prong. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under the subjective prong, the analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501

---

*v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *Inmates, Washington County Jail v. England*, 516 F. Supp. 132, 138 (E.D. Tenn. 1980), *aff'd,* 659 F.2d 1081 (6th Cir. 1981); *see also Nicholson v. Georgia Dep't of Human Resources*, 918 F.2d 145, 148 n.1 (11th Cir. 1990). Furthermore, there is no indication in the medical records or other evidence this conversation took place.

9

U.S. 294, 300 (1991). Deliberate indifference is established only when the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

Prison working conditions have been found to be conditions of confinement subject to scrutiny under the Eighth Amendment. *See, Smalls v. Berrios*, 2007 WL 1827465 (N.D. Fla 2007) (*citing Morgan v. Morgensen*, 465 F.3d 1041 (9th Cir. 2006); *Stephens v. Johnson,* 83 F.3d 198, 200 (8th Cir. 1996); *Franklin v. Kansas Dep't of Corrections*, 160 Fed. Appx. 730, 736 (10th Cir. 2005); *Lee v. Sikes*, 870 F.Supp. 1096, 1099 (S.D. Ga. 1994)); *see also, Gilkerson v. Worthey*, No. 4:07cv25-WS, 2008 WL 4194812 (N.D. Fla. Sept. 10, 2008).

Courts have consistently held an unsafe work environment is not in and of itself always a violation of the Eighth Amendment. See *Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996). The Eighth Amendment is implicated only when a prisoner alleges a prison official compelled him to "perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain." *Berry v. Bunnell,* 39 F.3d 1056 (9th Cir. 1994); *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977); *Smalls, supra* at 6; *Terrill v. Bertussi*, No. 2:05 CV 96, 2005 WL 3277990 (W.D. Mich. Dec. 2, 2005). Moreover, courts have found no showing of deliberate indifference where the officer "failed to properly instruct an inmate or provide certain safety equipment." *See, Gilkerson v. Worthey***,** 2008 WL 4194812 (N.D.Fla. 2008) (citing, *Terrill, supra*; *Stephens v. Johnson*, 83 F.3d 198, 200 (8th Cir.1996); *Arnold v. South Carolina Dept. Of*

*Corrections*, 843 F.Supp. 110, 111 (D.S.C.1994); *Warren v. State of Missouri*, 995 F.2d 130 (8th Cir. 1993) (failure to provide safety equipment on saw, even with knowledge of prior accidents, not deliberate indifference); *Bibbs v. Armontrout*, 943 F.2d 26 (8th Cir.1991) (failure to repair safety guards was found to be negligence only); *Franklin v. Kansas Dept. Of Corrections*, 160 Fed. Appx. 730, 736 (10th Cir. 2005) (failure to instruct inmate on proper lifting techniques not deliberate indifference).

Moore cannot establish Defendants violated his Eighth Amendment rights. Moore was trained and certified in working with lead based paint, his work with lead based paint was voluntary, and he had the right to request a change in assignment if he was not comfortable with the work or work environment. Moore volunteered to take a position with ACI doing lead based paint abatement work on two projects between 2009 and 2010. The supervisors for those jobs were Defendants Johnson and Martin. Martin and Johnson made sure that proper equipment was onsite for those projects, and directed the inmate crews to use it when exposure to lead was possible. One week in March or April 2010, while working on the Wheeler House project, Moore was assigned to spray a paint stripper, but was provided with only a face shield. Moore asked Martin and Johnson for a respirator, but they did not provide him with one and responded Defendant Farquire would not provide a respirator for that type of work. Moore did not decline to spray the paint stripper without a ventilator, complain about the matter, or ask to be reassigned from the work.

In May of 2010, Moore, a chronic smoker, was seen at the infirmary due to allergy and respiratory symptoms. He was provided with nasal spray and an allergy tablet, which he reported helped the problem. In April 2011, Moore was seen in the infirmary, where he complained of sinus pressure, a headache, lower back pains, and stated he had coughed up blood.

Subsequent medical tests revealed the presence of a thirteen millimeter nodule in Moore's right lung. This nodule appears benign and has not grown or changed. Moore believes his exposure to paint stripper for the one week in 2010 was the cause of the nodule and other health issues.

The undersigned does not find these facts have established, as they must for a showing of deliberate indifference, that: (1) Moore's use of paint stripper for one week without a respirator posed a substantial risk of serious harm to him; (2) Defendants were aware that the use of paint stripper for one week constituted a substantial risk of serious harm and did not take reasonable measures to abate that risk; and (3) Moore was compelled to perform the work under those conditions.

First, Moore presents no evidence the exposure to paint stripper for one week constituted a substantial risk of harm. While it is undisputed Moore, a long time smoker, was diagnosed with a small, benign, and stable nodule in his lung following a CT scan, he presents no evidence when the problem first developed, how long the nodule had been in his lung, or that being exposed to the fumes from the paint stripper actually caused the problem.

Second, Moore has presented no evidence Defendants were aware of the alleged danger and failed to take reasonable measures to abate the risks. Defendants provided undisputed testimony safety equipment was available and required to be used when there was a danger of lead exposure. Moore does not contend he was *never* provided with, or routinely denied a respirator during the duration of his lead based paint work, but complains only of a one week period of time when he was spraying paint stripper without one. Further, there is nothing to suggest Defendants were aware spraying paint stripper without a respirator for a short period of time actually poses a substantial risk of serious harm. Moreover, as noted, courts have

consistently held failure to provide safety equipment for use on prison work details does not constitute deliberate indifference.

Finally, Moore does not allege, nor is there any evidence to suggest, he was in any way compelled to perform the work. Participation in this work release program was voluntary, and inmates working with lead based paint were not required to perform that type of work if they were not comfortable doing so. Moore concedes he was trained in safety techniques for working with lead based paint, and had learned what equipment was necessary to safely perform the work. Had Moore not wished to spray the paint stripper with only a face shield for his safety, there is nothing to suggest he could not have declined to do so.

Moore's allegations Martin and Johnson failed to provide him with a ventilator for one week while he was assigned to spray a paint stripper do not rise to the level of deliberate indifference. Moore's allegations do not establish an Eighth Amendment violation. Defendants' motion for summary judgment is due to be granted and this case dismissed.

To the extent Moore seeks to implicate Defendants Farquire, Carter, and Allen through the doctrine of *respondeat superior*, this doctrine is unavailable in actions brought under § 1983. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-92 (1978); *see also Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995). "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that

>subordinates would act unlawfully and failed to stop them from doing so.

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).  "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988).

Moore has described this one incident wherein he alleges he was not provided with the proper safety equipment. This one incident, by itself, does not demonstrate that any of the supervisory defendants knew of this alleged safety risk and failed to take actions to correct it. Neither does Moore allege these individuals directed their subordinates to act unlawfully or knew they would act unlawfully and failed to stop them from doing so, or that they had established a custom or policy which resulted in deliberate indifference.

The motion for summary judgment as to the claims against Defendants Farquire, Carter, and Allen is due to be granted and those claims are due to be dismissed.

## V. RECOMMENDATION

For the reasons stated above, the magistrate judge RECOMMENDS Defendants' special report be treated as a motion for summary judgment and, as such, GRANTED and this action DISMISSED WITH PREJUDICE.

## VI. NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Nettles v. Wainwright*,

677 F.2d 404 (5th Cir. 1982) (en banc).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon Plaintiff and upon counsel for Defendants.

DATED this 16th day of January 2014.

_____
JOHN H. ENGLAND, III
UNITED STATES MAGISTRATE JUDGE